# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LISA L.[1],                                         Case No. 2:21-cv-5034
      Plaintiff,                             Sargus, J.
                                                   Litkovitz, M.J.

     vs.

COMMISSIONER OF                                    **REPORT AND**
SOCIAL SECURITY,                                   **RECOMMENDATION**
      Defendant.

Plaintiff Lisa L. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 9), and plaintiff's reply memorandum (Doc. 10).

## I. Procedural Background

On August 26, 2019, plaintiff protectively filed an application for DIB alleging disability beginning October 24, 2017, due to Postural Orthostatic Tachycardia Syndrome, restless legs, and depression. (Tr. 157-63, 196). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Mary Lohr. On November 16, 2020, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 12-30). This decision became the final decision of the Commissioner when the Appeals Council denied review on August 11, 2021.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.

> 2. [Plaintiff] has not engaged in substantial gainful activity since October 24, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

> 3. [Plaintiff] has the following severe impairments: postural orthostatic tachycardia syndrome, major depressive disorder and unspecified trauma and stressor-related disorder (20 CFR 404.1520(c)).

> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant is limited to the performance of simple, routine, repetitive tasks, conducted in a setting that is routine, in that it contemplates few changes in workplace tasks or duties, which setting requires no more than occasional interaction with co-workers, supervisors, and the public.

> 6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

> 7. [Plaintiff] was born . . . [in] 1980 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

> 8. [Plaintiff] has a limited education (20 CFR 404.1564).

---

[2] Plaintiff's past relevant work was a forklift operator, a medium, but performed at heavy at times, semi-skilled position; a fast-food worker, an unskilled, light exertion position; a food service worker, a light, unskilled position; and a prep cook, a medium, but performed at the light level, unskilled position. (Tr. 24-25, 53-54).

9. Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 24, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-26).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as addresser (2,600 jobs nationally), document preparer (19,000 jobs nationally), and table worker (1,000 jobs nationally). (Tr. 25-26, 55).

4

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors

In her first and second assignments of error, plaintiff alleges the ALJ erred in evaluating the opinions from the state agency psychologists, Drs. Darrell Snyder and Jaime Lai, and from the consultative examiner, Dr. Peter Surace. (Doc. 7). The Commissioner argues that the ALJ's decision is supported by substantial evidence, and the ALJ properly evaluated the opinions from Drs. Snyder, Lai, and Surace consistent with the regulations and based on the record evidence. (Doc. 9).

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[4] *Id*. The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical

---

[4] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

finding(s),[5] including those from your medical sources."  20 C.F.R. § 1520c(a).  Rather, the Commissioner will consider "how persuasive" the medical opinion is.  20 C.F.R. § 1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion.  20 C.F.R. § 1520c(c)(1)-(5).  The most important factors the ALJ must consider are supportability and consistency.  20 C.F.R. § 1520c(b)(2).  With respect to the supportability factor, "[t]he more relevant the objective medical evidence[6] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 1520c(c)(1).  Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ."  20 C.F.R. § 1520c(c)(2).  The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision.  20 C.F.R. § 1520c(b)(2) (emphasis added).  Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation.  *Id.*  However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how

---

[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[6] Objective medical evidence is defined as "signs, laboratory findings, or both."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

### 1. The ALJ's evaluation of the state agency psychologists' opinions is supported by substantial evidence.

In her first assignment of error, plaintiff alleges the ALJ erred by "improperly reject[ing] the opinions of the state agency psychologists, resulting in an inaccurate residual functional capacity." (Doc. 7 at PAGEID 419). Plaintiff argues that the ALJ "did not properly explain how the state agency psychologists' opinions were less persuasive." (*Id*.). As best the Court can discern, plaintiff alleges the ALJ's RFC is not supported by substantial evidence because the ALJ failed to include "the state agency psychologists' social functioning limitations" in the RFC. (*Id*.; *see also Id*. at PAGEID 420, 422).

On December 30, 2019, state agency psychologist Dr. Snyder completed a mental residual functional capacity assessment and opined that plaintiff was able to understand, remember, and carry out 1-3 step tasks at a consistent, but not rapid pace, in a non-public environment with occasional and superficial contact with others. (Tr. 79). Dr. Snyder opined that plaintiff was "not significantly limited" in the ability to remember locations and work-like procedures, understand, remember, and carry out very short and simply instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; plaintiff was "moderately limited" in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or in proximity to others without being

7

distracted by the them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and plaintiff was "markedly limited" in the ability to carry out detailed instructions. (Tr. 77-79). State agency psychologist Dr. Lai reviewed plaintiff's file upon reconsideration on June 3, 2020, and generally affirmed Dr. Snyder's opinions finding they were consistent with and well supported by the totality of the evidence. (Tr. 89-91). Dr. Lai found plaintiff was "moderately limited," as opposed to "markedly limited," in the ability to carry out detailed instructions. (Tr. 90).

The ALJ found the opinions of the state agency psychologists "partially persuasive." (Tr. 24). The ALJ stated that the opinions "overstate, to mild degree, the claimant's cognitive limitations, and to greater degree, her social limitations[, and] [t]hey understate the claimant's adaptive limitations." (*Id*.). In evaluating the consistency and supportability of the state agency psychologists' opinions, the ALJ concluded:

> The state agency psychological consultants, Darrell Snyder, Ph.D., and Jaime Lai, Psy.D., each indicated that the [plaintiff] would be able to perform one-to-three-step tasks, with no rapid pace or strict production quotas, involving only occasional and superficial interaction with others, in a non-public setting. Each of these doctors had the opportunity to review the evidence of record, to which each cited liberally in support of their conclusions and each is well versed in the terminology and analytical framework employed in the disposition of these claims. The record shows a claimant with chronic depression and post-traumatic stress disorder. These would be expected to, and the record supports does (3F/4), impose mild, at least periodic deficits of memory and concentration. However, the [plaintiff] remains possessed of intellectual function within normal limits (3F/5), generally normal memory function (3F/4), (4F/4), and sometimes good concentration (4F/4). The claimant is said to provide good effort (3F/4), and exhibit a clear thought process (4F/4), with no loose associations (3F/4). In a setting where the [plaintiff] would be restricted to the performance of simple, routine, repetitive tasks, she appears to have retained sufficient, residual, cognitive function to serve as "backstop" against

8

these mild, periodic deficits from becoming fatal to competitive work. The claimant has described preferring to stay to herself, and was periodically tearful in session with the consultative examiner (3F). However, she has no forensic history (3F/2), denies having ever lost a job due to interpersonal difficulties (4E/7), [and] maintains interaction with family (3F/4). She is discernibly able to function in public places, such as stores (3F/4), and is normally described in pro-social terms in the record (4F/4), even when demonstrably symptomatic of mood (3F/4). In a setting where the frequency of her interaction with others would be controlled, she appears to have retained sufficient, residual, social function to engage in competitive work. The [plaintiff] describes a poor reaction to stressors or changes (4E/7). However, the plaintiff has exhibited typical levels of insight and judgment (3F/5). During the hearing, she described shifting her place of residence between three family members, sometimes after stays as short as two weeks, which necessitates advance planning and toleration of change on short notice (hearing testimony). In a setting where the [plaintiff] would be restricted to the performance of simple, routine, repetitive tasks to begin with, conducted in a setting involving few changes in workplace tasks and duties, she appears to have sufficient, residual, adaptive function to engage in competitive work. These opinions overstate, to mild degree, the [plaintiff]'s cognitive limitations, and to greater degree, her social limitations. They understate the [plaintiff]'s adaptive limitations. These opinions are only partially consistent with, and supported by, the overall evidence of record and are only partially persuasive.

(Tr. 23-24).

In arguing that the ALJ "improperly rejected the opinions of the state agency psychologists," plaintiff contends that the ALJ "did not provide proper reasoning that would explain to a subsequent reviewer why their expert mental health opinions were being rejected." (Doc. 7 at PAGEID 419). Plaintiff principally argues that the "reasoning supplied by the ALJ is not supported by substantial evidence" because the ALJ "does not explain why the state agency psychologists' opinions were discredited." (*Id*. at PAGEID 420).

The ALJ's evaluation of the state agency psychologists' opinions is supported by substantial evidence. First, plaintiff's argument that the ALJ "rejected" the opinions of the state agency psychologists (Doc. 7 at PAGEID 419) is without merit. In evaluating the opinions of the state agency psychologists, the ALJ found them to be "partially persuasive." (Tr. 24). Notably, while the ALJ found the opinions overstated plaintiff's cognitive and social limitations,

the ALJ expressly found that the opinions understated plaintiff's adaptive limitations.  (*Id.*).

Moreover, the state agency psychologists opined that plaintiff was able to understand, remember,

and carry out 1-3 step tasks at a consistent, but not rapid pace, in a non-public environment with

occasional and superficial contact with others.  (Tr. 79, *see also* Tr. 89-91).  Consistent with

these limitations, the ALJ limited plaintiff to the performance of simple, routine, repetitive tasks,

conducted in a setting that is routine, in that it contemplates few changes in the workplace tasks

or duties, which setting requires no more than occasional interaction with co-workers,

supervisors, and the public.  (Tr. 20).  Accordingly, plaintiff's argument that the ALJ "rejected"

the opinions of the state agency psychologists is belied by the record and the corresponding

limitations and restrictions in the RFC.

Second, the ALJ properly concluded that the state agency psychologists' opinions

overstated, to a mild degree, plaintiff's cognitive limitations, and to a greater degree, her social

limitations.  (Tr. 24).  In making this finding, the ALJ cited numerous exhibits in the record

showing that plaintiff possessed intellectual function within normal limits, generally normal

memory function, and sometimes good concentration; she provided good effort, exhibited a clear

thought process with no loose associations; exhibited typical levels of insight and judgment; she

had no forensic history, denied having ever lost a job due to interpersonal difficulties, maintained

interaction with family, and was able to function in public places; and she was normally

described as pro-social terms in the record even when demonstrably symptomatic of mood.  (Tr.

23-24, citing Tr. 210, 335, 337-38, 344).

Plaintiff disagrees with the ALJ's reasoning and argues that if "closely examined," the

ALJ's reasoning is flawed.  For example, in assessing plaintiff's social functioning, the ALJ

noted that plaintiff never lost a job due to interpersonal difficulties.  Plaintiff argues that her prior

jobs and substantial gainful activity were during a time period prior to her alleged onset date. However, this is true for most claimants since they must first show that they did not engage in any substantial gainful activity after the alleged onset date at step one of the sequential evaluation process. *See* 20 C.F.R. § 404.1520(a), (b). The ALJ properly considered plaintiff's interactions with others in a job setting as one factor in assessing the state agency psychological opinions. Plaintiff disputes the ALJ's citation to the opinion of the consultative examiner, who was not a mental health expert, in finding that the record shows plaintiff was "pro-social." It was reasonable for the ALJ to consider how plaintiff interacted with both physical and mental health physicians, particularly in light of the limited evidence of record. Plaintiff also argues the ALJ failed to explain how her ability to interact with her family and shop for groceries is inconsistent with the opinions of the state agency psychologists. (Doc. 7 at PAGEID 422-23). The ALJ did not equate plaintiff's ability to interact with her family members and to shop in public with the ability to interact properly with others in a work setting. The ALJ noted that while none of plaintiff's daily activities considered in isolation would warrant a finding of "not disabled," when considered in combination with the other evidence of record, they reasonably supported a finding that plaintiff retained sufficient residual social functioning to engage in competitive work.

Even where plaintiff identifies evidence that could support a different conclusion than that of the ALJ, the Court is not free to substitute its judgment for the ALJ's if such evidence reasonably supports the ALJ's conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). "[T]he ultimate findings of the ALJ 'are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). "The substantial-evidence standard . . . presupposes that there is a zone of

choice within which the decisionmakers can go either way, without interference by the courts."
*Id*. (quoting *Blakley*, 581 F.3d at 406) (alteration in original).  *See also Nathaniel F. v. Comm'r of Soc. Sec.*, No. 2:20-cv-5364, 2022 WL 420083, at *8 (S.D. Ohio Feb. 11, 2022) ("Moreover, there is no question that crediting [the] Plaintiff's argument here would require the Court to re-weigh evidence, something it simply cannot do.") (citing *Colvin v. Comm'r of Soc. Sec.*, No. 5:18-cv-1249, 2019 WL 3741020, at *14 (N.D. Ohio May 8, 2019), *report and recommendation adopted*, 2019 WL 4743624 (N.D. Ohio Sept. 30, 2019)).  The ALJ examined the consistency and supportability of the state agency psychologists' opinions as required by 20 C.F.R. § 404.1520c and reasonably found their opinions "partially persuasive."  (Tr. 23-24).  The ALJ's evaluation of these opinions is supported by substantial evidence, and plaintiff's first assignment of error should be overruled.

Within this assignment of error, plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence.  Plaintiff argues that the "ALJ improperly rejected the opinions of the state agency psychologists, resulting in an inaccurate residual functional capacity."  (Doc. 7 at PAGEID 419) (emphasis added).

The ALJ's RFC, in pertinent part, limits plaintiff to a "setting [which] requires no more than occasional interaction with co-workers, supervisors, and the public."  (Tr. 20).  Plaintiff appears to argue the ALJ should have adopted the state agency psychologists' additional limitations of work in a "non-public environment" having only "superficial contact with others."  (Doc. 7 at PAGEID 419-23).

While physicians may render an opinion on a claimant's functional capacity, the ultimate responsibility for determining a claimant's RFC for work lies with the ALJ.  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).  The ALJ must base the RFC

finding on all of the relevant medical and other evidence, including the medical opinions of record. *See* 20 C.F.R. § 404.1546(c); 20 C.F.R. § 404.1545(a)(3). *See also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). The ALJ, however, is not required to adopt a medical source's opinion on limitations verbatim in assessing a claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment." SSR 96-5p, 1996 WL 374183, at *54. For the reasons explained above, the ALJ's finding that plaintiff was not as limited as opined by state agency psychologists is supported by substantial evidence. Thus, the ALJ was not required to adopt all of the limitations those psychologists assessed. The ALJ's RFC is supported by substantial evidence, and plaintiff's assignment of error should be overruled.

### 2. The ALJ's evaluation of Dr. Peter Surace's opinion is supported by substantial evidence.

In her second assignment of error, plaintiff alleges the ALJ "improperly rejected the opinions provided by the consultative examiner, Dr. Surace." (Doc. 7 at PAGEID 424). Plaintiff argues the ALJ's finding that Dr. Surace's opinions were inconsistent with the overall record is not supported by substantial evidence. (*Id*. at PAGEID 426). Plaintiff also argues that the ALJ improperly rejected Dr. Surace's opinions on the basis that plaintiff was non-compliant with treatment. (*Id*. at PAGEID 426-27). The Commissioner argues that substantial evidence supports the ALJ's evaluation of Dr. Surace's opinions. (Doc. 9).

On December 28, 2019, plaintiff was physically examined by Dr. Surace, a consultative examiner. (Tr. 341-46). Plaintiff alleged disability due to Postural Orthostatic Tachycardia Syndrome ("POTS"). (Tr. 341). Plaintiff was in acute distress and was having an active POTS

attack.  (Tr. 343; *see also* Tr. 345).  Dr. Surace stated that plaintiff was significantly tachycardic with her heart rate in the 170 to 180 range.  (*Id.*).  It took approximately ten minutes for plaintiff's heart rate to drop below 100 beats per minute after plaintiff went from standing to lying supine.  (Tr. 345).  Dr. Surace did not attempt to stand plaintiff back up to do the standing, walking, or gait aspects of the examination for these reasons.  (*Id.*).

Dr. Surace noted that plaintiff was alert, had good eye contact, and fluent speech; she had an appropriate mood and clear thought processes with normal memory and good concentration; and she was oriented to time, place, person, and situation.  (Tr. 344).  Dr. Surace observed that plaintiff did not arrive at the appointment with an assistive device; she had a steady and symmetric gait; and she had good hand eye coordination and normal nose and heel to shin results.  (*Id.*).  Plaintiff's lungs were clear to auscultation and percussion bilaterally; she had a soft, non-tender, and non-distended abdomen with normally active bowel sounds; she had no clubbing, cyanosis, or edema in her extremities; her sensory examination was normal to light touch throughout; her straight leg test was negative bilaterally with sitting and supine; she had no joint swelling or effusion, erythema, tenderness, or musculoskeletal deformity; she was able to lift, carry, and handle light objects; and her fine and gross manipulative abilities were grossly normal.  (Tr. 343-44).  Dr. Surace recommended plaintiff undergo a formal psychiatric and mental assessment based on his discussion with plaintiff concerning her depression and accompanying symptoms.  (Tr. 345).

Concerning plaintiff's POTS, Dr. Surace opined:

[I]t would be undoubtedly impossible given her current symptomatology for her to partake in activities that require standing, walking, lifting or carrying.  She is not using an assist device, but I do think she would benefit greatly from either a walker or just a wheelchair when she needs to get from one place to another, as her POTS attacks are severe in nature and occur essentially every time that she stands up.

The claimant has no limitations with sitting. The claimant has severe limitations with standing and walking due to postural orthostatic tachycardia syndrome. The claimant needs an assistive device (walker/wheelchair recommended) with regards to short and long distances and uneven terrain. The claimant has severe limitations with lifting and carrying weight due to postural orthostatic tachycardia syndrome. There are limitations with bending, stooping, crouching and squatting and the claimant will not be able to perform these due to postural orthostatic tachycardia syndrome. There are no limitations on reaching, grasping, handling, fingering and feeling. There are no relevant visual, communicative or workplace environmental limitations.

(Tr. 346).

The ALJ found Dr. Surace's opinions "not persuasive." (Tr. 23). The ALJ reasoned:

Dr. Surace examined the claimant on a single occasion and is reporting within the bounds of his professional certifications. These limitations would be appropriate on the date of his examination, and in the midst of her exacerbation. However, by comparison to the overall evidence of record, described in digest form above, and taking into consideration her non-compliance with prescription therapies known to be effective, this opinion overstates the claimant's exertional and postural limitations, and is not persuasive.

(*Id*.). Elsewhere in the opinion, the ALJ stated:

During the consultative physical examination, she experienced an acute postural orthostatic attack, when her heart rate reached near 180 beats per minute, and dropped, over the course of ten minutes, to roughly 80 beats per minute while lying down (4F/5). However, on March 4, 2020, during one of Dr. [Tae] Jung's[7] few office visits recorded by a scribe, the claimant exhibited a regular rate and rhythm, normal S1 and S2, with no murmur, rub or gallop (5F/4).

There are significant gaps in the claimant's treatment. Her last focused treatment for this impairment pre-dates, albeit by a matter of days, her alleged onset date (1F). She saw Dr. Jung once between February 9, 2018 and February 13, 2019 (2F/3-4). She saw him twice in February 2019 and once in March 2019 (5F), but did not return until February 2020 (5F/6-7).

There can be no gainsaying the accuracy of her description of the symptoms, during manifestations of this impairment, given her experience with Dr. Surace. However,

---

[7] The ALJ describes Dr. Tae Jung as "claimant's treating source[.]" (Tr. 20). Plaintiff, however, includes no assignment of error pertaining to any of Dr. Jung's opinions that may appear in the record. On this point, the ALJ stated, "[a]s a prefatory matter, it is noted that the records of the claimant's treating source, Tae Jung, M.D., are handwritten, using what appears to be a non-standard form of shorthand, and which has proven utterly indecipherable. The claimant's representative concedes the point (16E/1)." (*Id*.)

there is also the matter of her want of treatment, and non-compliance with medicinal treatments known to be at least partially effective.

(Tr. 21).

Plaintiff argues the ALJ improperly found "Dr. Surace's opinions were inconsistent with the overall record," and the ALJ's inconsistency finding "is not easily identifiable." (Doc. 7 at PAGEID 426). Plaintiff alleges that "when her symptoms are exacerbated," as evidenced by her POTS attack during Dr. Surace's examination, "she will be limited in the capacity that Dr. Surace opined in his report." (*Id.*). Plaintiff argues that the "ALJ completely overlooked the episodic nature of [plaintiff's] impairments, and instead, simply characterized Dr. Surace's opinions as inconsistent with the rest of the record." (*Id.*).

The ALJ's finding that Dr. Surace's opinions are inconsistent with the record as a whole finds substantial support in the record. Contrary to plaintiff's allegation that the ALJ "overlooked the episodic nature of [plaintiff's] impairments" (*Id.*), the ALJ recognized and acknowledged that plaintiff experienced a POTS attack during her consultative examination with Dr. Surace. (Tr. 21). The ALJ acknowledged that the limitations opined by Dr. Surace "would be appropriate on the date of his examination, and in the midst of her exacerbation." (Tr. 23). However, when Dr. Surace's one-time examination opinion was considered in the context of the overall record evidence and plaintiff's noncompliance with prescription therapies known to be effective, the ALJ reasonably determined that plaintiff was not as limited as opined by Dr. Surace.

The ALJ's finding that plaintiff was noncompliant with prescription therapies known to be effective is supported by substantial evidence. The record shows that plaintiff's symptoms associated with POTS decreased when she was taking Ivabradine. (Tr. 18, citing Ex. 1F, Tr.

264-302; *see also* Tr. 252).[8]  Despite plaintiff's insurance declining continued coverage for this medication, plaintiff never attempted an alternative vasoconstrictor as prescribed to her on October 6, 2017.  (*Id.*; *see also* Tr. 21).  The ALJ reasonably found that plaintiff had lengthy periods of control with a combination of fludrocortisone and her anti-depressant, but stopped these medications, wanting an alternative that would allow her to continue working.  (*Id.*).  The ALJ noted there was no record evidence showing plaintiff engaged in any other facet of the multi-factorial treatment regime, such as the use of compression wear, elevation of the headboard of the bed, use of care when changing postures, increase in sodium intake, use of vasoconstrictors, increased fluid intake in the form of sports drinks[9], and an increase in activity and exercise, beginning, if need be, with cardiac rehabilitation.  (Tr. 21).

The ALJ also cited significant gaps in plaintiff's treatment for POTS.  The record shows that plaintiff's last focused treatment for POTS pre-dated her alleged onset date.  (*Id.*, citing Ex. 1F).  Plaintiff saw Dr. Jung once between February 9, 2018 and February 13, 2019.  (*Id.*, citing Tr. 305-06).  Plaintiff saw Dr. Jung twice in February 2019 and once in March 2019, but she did not return until February 2020.  (*Id.*, citing Ex. 5).  The ALJ reasonably considered the gaps in plaintiff's treatment and noncompliance with prescription therapies known to be effective, as well as plaintiff's activities of daily living, which included household chores, driving a car, shopping in stores, and managing her finances (Tr. 22), when assessing the consistency of Dr. Suraces opinion with the record as a whole.  Plaintiff has not cited, and the Court has not found,

---

[8] "Ivabradine is used to treat certain adults with heart failure (condition in which the heart is unable to pump enough blood to the other parts of the body) to decrease the risk that their condition will worsen and need to be treated in a hospital. . . .  Ivabradine is in a class of medications called hyperpolarization-activated cyclic nucleotide-gated (HCN) channel blockers.  It works by slowing the heart rate so the heart can pump more blood through the body each time it beats."  Ivabradine, https://medlineplus.gov/druginfo/meds/a615027.html (last visited on December 12, 2022).

[9] Plaintiff described an increase in fluid intake, but the ALJ reasonably found there was no information in the record stating the types of fluid used.  (Tr. 21).

record evidence suggesting plaintiff's POTS' symptoms occur with the frequency and severity assessed by Dr. Surace during his one-time examination.[10]  The ALJ's decision in this regard is supported by substantial evidence.

Accordingly, the ALJ's evaluation of Dr. Surace's opinions is supported by substantial evidence, and plaintiff's second assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Plaintiff's statement of errors (Doc. 7) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2.  Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 12/14/2022

Karen L. Litkovitz
Chief United States Magistrate Judge

---

[10] Plaintiff acknowledges "the record does not provide a great deal of detail concerning the intricacies of [plaintiff's] POTS."  (Doc. 7 at PAGEID 426).

18

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LISA L.,                                          Case No. 2:21-cv-5034
     Plaintiff,                                 Sargus, J.
                                      Litkovitz, M.J.

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).